IN THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR VOLUSIA COUNTY, FLORIDA


KELSO OUTDOOR ADVERTISING, LLC.,
and GARY JOHNSON,
               Plaintiffs/Petitioners,

        CASE NO.: _____

        Lower Case no.: A-09-041

v.

VOLUSIA COUNTY,
               Defendant/Respondent.
_____/

## PETITION FOR WRIT OF CERTIORARI PURSUANT TO RULE 9.100(F) AND COMPLAINT FOR DECLARATORY JUDGMENT, INJUCTIVE RELIEF, EQUAL PROTECTION AND DAMAGES

COMES NOW, Kelso Outdoor Advertising, LLC, a Florida limited liability company (hereinafter "Kelso Outdoor"), and Gary Johnson, a Florida resident (hereinafter "Johnson"), (collectively the "Petitioners" and/or "Plaintiffs"), by and through undersigned counsel, and petition this Court for the issuance of a Write of Certiorari directed to Volusia County, a political subdivision of the State of Florida (hereinafter the "County" and/or "Defendant" and/or "Respondent") that quashes the decision of the County Council which affirmed the zoning enforcement official's determination as stated in a letter dated May 28, 2009, as subsequently amended on June 3,

2009, regarding the stop work order issued by the County and the subsequent rescission of Sign Permit #20081101017 on property owned by Johnson located at 3131 W. International Speedway Boulevard, Daytona Beach, Florida.[1],[2]   Plaintiffs' further file this Complaint against the Defendant, seeking declaratory judgment, injunctive relief, relief from equal protection violations, and damages.

## PETITION FOR WRIT OF CERTIORARI

## THE PARTIES

1. Kelso Outdoor Advertising, LLC.   Petitioner, Kelso Outdoor Advertising, LLC, is a Florida limited liability company.  Kelso Outdoor is the successor in interest to Metro Outdoor Advertising, LLC., the entity named on the building permit applicant.  Prior to construction of the subject off-premise sign structure, Metro Outdoor Advertising, LLC assigned it's interest in the subject sign structure, and all related assets and interests, to Kelso.  As such, this Petition shall reference only Kelso, as Kelso is the owner of all assets and interests related to the subject off-premise sign.

---

[1] Reference to the appendix will be indicated by "A" followed by the appropriate page number and references to the transcript, which has been incorporated at the end of the Appendix, will be indicated by "T" followed by the appropriate page and line numbers.

[2] Petitioners provided notice of the filing of this Petition for Writ of Certiorari pursuant to Ordinance 72-380. However, said notice was provided in protest of the constitutionality of said Ordinance and was done without any intent on waiving the challenge to the Ordinance raised in the later Complaint.

2. <u>Gary Johnson.</u>   Petitioner, Gary Johnson is the owner of the real property located at 3131 W. International Speedway Blvd., Daytona Beach, Florida.  On October 24, 2008, Johnson entered into a Ground Sign Lease Agreement with Kelso, for the construction, operation and maintenance of an off-premise sign structure upon the Property. Pursuant to the terms of this Lease, Johnson was to receive, among other things, annual income from the lease of his real estate to Kelso Outdoor.

3. <u>Volusia County.</u>  Volusia County is a political subdivision of the State of Florida.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to Article V, Section 5, Florida Constitution and Rule 9.030(c)(3), Florida Rules of Appellate Procedure.  See <u>Haines City Community Development v. Heggs</u>, 658 So.2d 523 (Fla. 1995); <u>Board of County Commissioners of Brevard County v. Snyder</u>, 627 So.2d 469 (Fla. 1993). Venue is proper in this court in that the real property at issue is located within an unincorporated area of Volusia County, Florida, and the claims at issue arose in Volusia County, Florida.

3

## NATURE OF THE RELIEF SOUGHT

Petitioners request that the Court issue a Writ of Certiorari quashing the County's stop work order and its rescission of Petitioners' sign permit because the County failed to follow the essential requirements of law and the County's judgment is not supported by competent substantial evidence.

## STATEMENT OF THE CASE AND FACTS

Statement of the Case.

This Petition arises from a decision by the County Council to affirm the Code Enforcement Official's issuance of a stop work order and rescission of the sign permit previously issued to the Petitioners, which was based upon a determination by the Director of Planning and Development Services that the sign permit was issued in error. In it's vote at the public hearing held on August 6, 2009, the Council failed to strictly comply with clear and unambiguous language set forth in the County Code, failed to afford the Petitioner's equal protection of the law by citing to code provisions that the County had never applied to similar property owners, interpreted certain provisions of the County Code in a manner that amounts to an unconstitutional taking of private property without the payment of just compensation, and failed to equitably estop the Code Enforcement Official

from taking the building permit after the Petitioners' had vested rights in the permit.

Facts of the Case.

The subject property is located at 3131 W. International Speedway Boulevard, Daytona Beach, Florida, Parcel ID# 5234-00-00-0220 (the "Property") (A2). The Property consists of just under half an acre, with lot dimensions of 107.32 feet wide by 122.0 feet deep (A11). Johnson is the owner of the Property (A2). The Property is zoned I-1 (c) (Industrial) (A2). The Volusia County Code of Ordinances (hereinafter referred to as the "Code") allows off-premise sign structures to be built upon property that is zoned I-1 (A19). On November 7, 2008, Kelso submitted a building permit application to the County for the construction of an off-premise sign structure upon the Property (A35-37). On February 6, 2009, the County issued the subject sign permit (A39). Additionally, on November 7, 2008, the Petitioners submitted the State of Florida Department of Transportation State Sign Permit Application to Volusia County because the state permit requires that a local government official certify to the State of Florida, among other things, that the outdoor advertising sign is in compliance with all duly adopted local ordinances and has been or will be issued the necessary permits (A33). On November 13, 2008, Scott Ashley, the County

5

Planning Manager signed the State of Florida Application certifying to the State of Florida that under his delegated authority it was his determination that the outdoor advertising sign was in compliance with all duly adopted local ordinances and would be issued the necessary permits (T16:15 – 16:22). With the local and the state permit in hand, Petitioners' then incurred over $100,000.00 in expenses when Petitioners ordered the steel sign structure, contracted for labor, hired cranes, paid for other building materials, paid lease payments and closed the retail business during construction (A6) (T25:22 – 26:1). Petitioners commenced construction of the off-premise sign pursuant to the terms of the issued permit (T16:23 – 16:25). After construction commenced, two County Council Members received communications from one of the neighboring property owners who objected, in principal, to a billboard going up next door to his business (T5:17 – 6:7) (A43-46). On May 27, 2009, after the off-premise sign structure was almost complete, the County Code Enforcement Officer issued a stop work order (T7:11-7:12)). When the Code Enforcement Official was reached on the telephone, he was unable to give the reason why the Stop Work Order was issued and advised the Petitioners to contact the County Director of Planning and Development Services (T17:5 – 17:9). On May 28, 2009, the Director of Planning and Development issued an official

6

determination letter advising that current use taking place on the Property, an aquaculture business[3], was a nonconforming use because the lot is zoned industrial (I1) and said activity is not permitted within the I1 zone (A2). The County's determination letter went on to opine that, as a result of there being a nonconforming use taking place on the property, the outdoor advertising sign could not be built on the same lot where the nonconforming use was taking place pursuant to the Volusia County Code of Ordinances, Section 72-206 (A2). The applicable portion of Section 72-206 states:

> *72-206(2) In any classification, a lawful principal or accessory use of premises existing on the effective date of adoption or amendment of the ordinance from which this article derives, but not permitted thereafter, may continue, or be resumed if destroyed, provided:... (c) No additional structure is constructed or erected in connection with such nonconforming use."* (A 14)

Following receipt of this determination letter, counsel for the Petitioners discussed what was clearly an erroneous application of a wholly inapplicable code provision to the facts at hand with the County Assistant Attorney (T17:23 – 18:5). The County expressed its interpretation of the Ordinance to mean that if there was <u>any</u> nonconformity taking place on a parcel of land, then there could be no further development of any kind on the same parcel.

---

[3] The Petitioners have, throughout the appeal process, and again, in this Petition and Complaint process, clearly taken the stance that Petitioner Johnson's business activity is not an aquaculture business. However, the challenge to the title given to Petitioner Johnson's use is not at issue in this matter. As such, while the issue is disputed, for purposes of this Petition and Complaint, the use will be referenced as an aquaculture business.

Correspondence dated May 28, 2009 was sent by counsel for Petitioners to the County which outlined, among other things, the blatant inapplicability of the cited ordinance (A3-7). After receiving the Petitioners' legal position on the inapplicability of the cited Ordinance, the County issued an amended Official Determination letter, dated June 3, 3009, in which the County then cited to a total of three code provisions that were allegedly applicable to the Petitioner's sign permit application and that allegedly provided the justification for the alleged error that took place when the permit was issued (A11-12). In addition to the continued reliance upon Section 72-206(2)(c), the County also advised that if the off-premise sign structure was considered a principal use as opposed to an accessory use, then Volusia County Code of Ordinances, Section 72-280(b) would apply and that said Ordinance allows for the construction of a second principal structure on an Industrial zoned lot only if all the requirements of the Code are met for each structure (A11-12). The County went on to advise that the subject Property did not meet the minimum lot size and width requirements for Industrial-zoned lots, that because of this it the Property was a nonconforming lot, and therefore, the second principal structure could not be built since the code was not met (A11-12 ). The County was later advised by the Petitioners' counsel that Volusia County Code of Ordinances, Section 72-206(1) states, inter alia:

8

*"72-206(1) In any zoning classification, principal and accessory structures otherwise authorized under this article may be erected or constructed on any single nonconforming lot,... if all classification requirements other than lot area or width are met."* (A30-31).

The County went on to state in its June 3, 2009 correspondence the third and final determination of why the building permit was allegedly issued in error, and in doing so the County cited to Volusia County Code of Ordinances, Section 72-297(j) which states that within a thoroughfare overlay zone, "ground signs" are limited to a maximum sign height of eight (8) feet and a maximum copy area of forty (40) square feet, and since the permit application proposed a sign that would exceed eight feet in height and forty square feet in copy area, that the building permit never should have been issued (A11-12). The County was again advised that the cited code provision was wholly inapplicable to the Petitioners' off-premise sign structure because (i) Ordinance 72-297(j) directs the County to apply the off-premise sign regulations to signs within a thoroughfare overlay district and when doing so, the permitted height and copy area is permitted, and (ii) the County has **never** regulated the size and copy area of off-premise signs by applying "ground sign" code provisions (A28-33). As evidence of this, the County was advised that not a single off-premise sign in Volusia County meets the "ground sign" size and copy area regulations, whether the sign is inside a thoroughfare overlay district or outside a thoroughfare overlay

9

district (A32). Pursuant to the language in Ordinance 72-297(j), the County is required to apply the standard sign regulations within a thoroughfare overlay district and the standard sign regulations applicable to Petitioners' off-premise sign are found at Volusia County Code of Ordinances, Section 72-298(9), which states:

> "72-298(9) Off-premise signs: Off-premise signs may only be erected in the B-6, 1-1 or 1-2 zoning classifications established in division 7, along federal-aid primary or interstate highways. Provided, however, that where the maximum number of signs is specified in this article, the erection of an off-premise sign shall not exceed the maximum number so specified. Said off-premises signs shall otherwise comply with the requirements of F.S. ch. 479 and chapter 14-10, Florida Administrative Code. "(A15)

The Petitioners appealed the decision of the Volusia County Code Enforcement Official, as set forth in the May 28, 2009 Official Determination Letter, as subsequently amended on June 3, 2009 (A25). At the public hearing held on August 6, 2009, the only question asked was by one council member who inquired about the County's right to rescind a permit that was issued in error (T26:24 – 29:18). Counsel for the Petitioners quickly pointed out that the County was citing to three code provisions that where wholly inapplicable in an attempt to try and justify an alleged error, as opposed to an actual error having been made when the permit was issued (T27:12-28:19). No further questions were asked; no further comments were made; and no explanation or basis for the decision was provided. Instead,

10

the Council voted 5 to 1 to uphold the decision of the Code Enforcement Official (T34:1 – 34:11).

## SUMMARY OF THE ARGUMENT

(1)   Nonconforming Use:   It is the Petitioner's position that the County does not have the authority under Ordinance 72-206(2)(c) to rescind the permit for construction of an off-premise sign because a conforming use (the off-premise sign) on a lot that involves an unrelated nonconforming use (the aquaculture business) is not prohibited under the ordinance.

(2)   Addition of Second Principal Structure:  The County does not have the authority to rescind the subject building permit pursuant to Ordinance 72-280(b), which allows multiple principal structures on a lot only if all the Code provisions are met for each structure, based on the stated reason that the lot is nonconforming in size and width, in light of Ordinance 72-206(1) which specifically directs the County to disregard nonconformities in lot size and width when permitting a second principal use.

(3) Thoroughfare Overlay Zone: The height and copy area restrictions for ground signs, as found in Ordinance 72-297(j) are wholly inapplicable to off-premise sign structures and have never been applied to all of off-premise

11

sign structure previously permitted by the County, both inside and outside of a thoroughfare overlay district.

## BASIS FOR INVOKING JURISDICTION

Rule 9.190(b)(3), Fla.R.App.P., states that review of quasi-judicial decisions of any administrative body, agency, board, or commission not subject to the APA shall be commenced by filing a petition for certiorari in accordance with rules 9.100(b) and (c). *See also*, <u>Florida Power and Light Co., v. City of Dania</u>, 761 So.2d 1089, 1092 9Fla. 2000), and <u>Haines City Community Development v. Heggs</u>, 658 So.2d 523, 530 (Fla. 1995). Petitioners have a due process right to processes provided by law. <u>Matthews v. Eldridge</u>, 96 S. Ct. 893 (1976), <u>Van Morfit v. USF</u>, 794 So.2ds 655 (Fla. 2d DCA 2001). Pursuant to Florida Rules of Appellate Procedure 9.100(c)(2), 190(b)(3), and 9.030(c)(3), certiorari review is appropriate to review quasi-judicial action of agencies, boards, and commissions of local government, not otherwise directly appealable, but which may be subject to review by certiorari. Sub-sections (f) and (h) of Rule 9.100 further provide for the issuance of an order to show cause where Petitioners can demonstrate a departure from the essential requirements of law that will cause material injury for which there is no adequate remedy by appeal.

In this case, an appeal was taken to the County Council where the County Council affirmed the decision of the Code Enforcement Official in determining that the original permit was issued in error based on the applicability of Section 72-206(2)(c), the inapplicability of Section 72-206(1), and/or the applicability of Section 72-297(j). This decision by the County Council is subject to review by writ of certiorari because such decision is quasi-judicial. Park of Commerce Associates v. Delray Beach, 636 So.2d 12,15 (Fla. 1994).

## STANDARD OF REVIEW

When a circuit court reviews the decisions of an administrative agency, there are three discrete components of its review. The circuit court must determine (1) whether procedural due process was accorded, (2) whether the essential requirements of the law have been observed, and (3) whether the administrative findings and judgment are supported by competent, substantial evidence. City of Deerfield Beach v. Vaillant, 419 So. 2d 624, 626 (Fla. 1982); Dusseau v. Metropolitan Dade County Board of County Commissioners, 794 So.2d 1270 (Fla. 2001); Florida Power & Light Co. v. City of Dania, 761 So.2d 1089 (Fla. 2000).

The circuit court's review is commonly referred to as "first-tier" certiorari review. Although it is frequently termed certiorari review, review

at the appellate level of the circuit court is not discretionary but rather a matter of right and is akin to a plenary appeal. Dusseau v. Metropolitan Dade County Board of County Commissioners, 794 So.2d 1270, 1273 (Fla. 2001); Florida Power & Light Co. v. City of Dania, 761 So.2d 1089, 1092 (Fla. 2000).

In determining whether the County observed the essential requirements of law, the Court must consider whether an error occurred and, if so, whether such error resulted in a gross miscarriage of justice. See Haines, 658 So.2d at 527.

In determining whether there was competent substantial evidence to support the administrative finding by the County, there must be evidence that is "sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached." See Department of Highway Safety and Motor Vehicles v. Trimble, 821 So.2d 1084, 1087 (Fla. 1st DCA 2002) (citing De Groot v. Sheffield, 95 So. 2d 912, 916 (Fla. 1957).

## ARGUMENT ONE

### THE CONSTRUCTION OF A CONFORMING OFF-PREMISE SIGN ON A LOT WHERE AN UNRELATED NON-CONFORMING USE EXISTS IS NOT PROHIBITED BY THE CODE.

Following receipt of a complaint from an affluent neighboring property owner, objecting to the billboard in its entirety, the County issued a stop work order and the subsequent May 28, 2009 Official Determination letter, in which the County was, for the first time, taking the position that the sign permit issued to the Petitioners was issued in error. The County went on to opine that since there was a non-conforming use taking place on the property, that being the aquaculture business, that Ordinance 72-206(2)(c) precluded any further development on a lot until the nonconforming use ceased to exist.

The County asserts that the nonconforming use taking place on the premises is the use of the building for an aquaculture business, a use that is not permitted in an I1 zoning designation. Thus, it is the specific use of the facility (for aquaculture) which is nonconforming. Simply put, if Mr. Johnson ceased selling fish and, instead, began selling adult books (a use permitted in the I-1 zoning district), then there would not be a nonconforming **use** on the premises any longer.

The preamble of Ordinance 72-206 states:

"Within the classifications established by this article, there may exist lots, uses or premises, or structures which lawfully existed before this article was effective or amended, but which would be prohibited, regulated or restricted under the terms of this article. These nonconformities may continue in their present condition but shall not

be enlarged, expanded, extended or used for adding other structures or uses prohibited elsewhere in the same classification."

Ordinance 72-206(2)(c), states that

"... a lawful principal or accessory use of premises existing on the effective date of adoption or amendment of the ordinance from which this article derives, but not permitted thereafter, may continue, or be resumed if destroyed, provided: ... (c) No additional structure is constructed or erected in connection with such nonconforming use."

As an example, pursuant to the foregoing Ordinance, there could not be an expansion to the building in order to increase the amount of aquaculture that is occurring on the lot, as this type of construction would be done "in connection with" the nonconforming aquaculture use on the property. Such activity would enlarge, expand and extend the nonconforming use. In the current situation, the off-premise advertising sign structure is not **connected** with the nonconforming aquaculture use of the property (it is not enlarging, expanding, or extending the nonconforming use which is the cultivation of fish on the property). Instead, no matter what items are sold within the building located on the lot, whether it is fish, adult books, or any other product (i.e., whether the use is conforming or nonconforming), is of no relevance or connection to the continued existence of an off-premise advertising sign structure on the property. In fact, if there was no retail at all on the lot, the off-premise sign would continue to exist. There is simply no

16

connection between the nonconforming use of aquaculture to the construction and operation of an off-premise advertising sign on the lot.

The County was advised of the inapplicable nature of the ordinance and upon receipt of this advise the Assistant County Attorney did not provide any justification for the County's attempt to apply this inapplicable Ordinance, but, instead, merely wrote '...assuming you are right, ...' and went on to cite other, unrelated issues. The County did not present any evidence as to why the cited Ordinance was applicable. The County did not provide any evidence of other situations in which they have interpreted this same provision in this same manner. Instead, the County simply came up with two additional and unrelated reasons why the County now considered the off-premise sign to be in violation of the Code. Despite the fact that the County was provided with evidence that the off-premise sign was not "connected" to the nonconforming aquaculture use, that whether the aquaculture use continued or was discontinued on the Property had no relevance or connection to the continued existence of the off-premise sign on the Property, the County continued to apply the subject ordinance in an attempt to justify the rescission of the sign permit previously issued to the Petitioners. The actions of the County, in not only failing to apply the correct

17

law, but in also failing to provide <u>any</u> evidence as to why the cited Ordinance was even applicable, amounted to a gross miscarriage of justice.

The County Council, without any further findings of fact or law, and without a shred of evidence to support the application of the incorrect law, simply upheld the zoning official's Stop Work Order. Accordingly, the County failed miserably to observe the essential requirements of the law when they affirmed the application of this inapplicable ordinance in an after-the-fact attempt to find some support for the Stop Work Order. Failure to apply the correct law, which is synonymous with a departure from the essential requirements of the law, is something more than a simply legal error. See <u>Haines City Community Development v. Heggs</u>, 658 So.2d 523, 528 (Fla. 1995). The actions of the County were not a simple legal error. They were advised of the inapplicable nature of the Ordinance, and simply found additional reasons to rescind the permit without ever justifying the first reason given. When a lower tribunal misapplies the law, a petition for writ of certiorari must be granted. See *Colonial Apartments, L.P. v. City of Deland*, 577 So.2d 593 (Fla. 5th DCA 1991).

The only comment made by the County on this issue during the public hearing was when the County stated that "...if we were to allow two simultaneous uses, then the nonconforming use might therefore never be

eliminated if we allowed overlapping uses." (T 12:10 – 12:13). The County's position that, if there is a nonconforming use on the property then it is the same as the entire **lot** being nonconforming, does not coincide with Section 72-206 of the Code of Ordinances. The ordinance has an entire section dealing with nonconforming **lots,** found at Section 72-206(1). Thus, to interpret the ordinance regarding nonconforming uses to mean that any nonconforming use on the property renders the entire lot nonconforming, would ultimately make Section 72-206(1), dealing with nonconforming lots, pointless. The codification of a distinct set of rules for nonconforming <u>uses</u> and a separate set of rules for nonconforming <u>lots</u> clearly goes to show that a nonconforming use on a lot does not render the entire lot nonconforming. To interpret the Ordinance as the County is attempting to, such that the Ordinance would mean that if you have a nonconforming use on the property then you cannot use the property for anything else, conforming or otherwise, would require that words found in 72-206(2)(c) that read "in connection with such nonconforming use" to be disregarded and instead, insert language that reads "No additional structure is constructed or erected on a lot containing a nonconforming use." That is simply not how the code is written. Zoning laws are in derogation of the common law and therefore are to be strictly construed, and the Respondent County has an affirmative

19

issuance of Petitioners' permit. In <u>Johnston v. Orange County</u>, 342 So.2d
1031 (Fla. 4th DCA 1977), the Appellant replaced single nonconforming
mobile homes with doublewide mobile homes. The County brought action
against the property owner to enjoin what the County felt was a violation of
code provision dealing with extensions or enlargements a nonconforming
use. *Id.* at 1032. The County ordinance stated that "[b]uildings or structures
or uses of land which are non-conforming shall not be extended or
enlarged,...." *Id.* at 1033. The court, in noting that the record was devoid of
any substantial evidence which might prove an extension or enlargement
took place, stated:

> "The Courts of this State have never questioned the right of a
> municipality or county to impose reasonable .restrictions on the
> expansion of a non-conforming use. However, justice requires
> substantial proof of the violation of such restrictions. To enter a
> judgment in favor of Orange County, on the fact of this record invades
> the constitutional guarantee of due process for protection of private
> property." *Id.*

Similar to what took place in <u>Johnston,</u> the record in this case is devoid of
<u>any</u> evidence, let alone substantial evidence, which would prove that the
addition of an off-premise sign structure on the Property is being built "in
connection with such nonconforming use" or that the off-premise sign
structure would result in the nonconforming aquaculture use being enlarged,
expanded, or extended. Furthermore, any attempt by the County to interpret

evidence, let alone any competent substantial evidence. For the County to blatantly disregard its own ordinance, after it is brought to the County's attention, without any further explanation or justification for ignoring it, goes to show that the County attempted to *create* a basis for revoking the previously issued sign permit, no matter if the basis was support by law or not, in an intentional attempt to disallow a permitted use. If there were ever a case of a gross injustice that has taken place as a result of a blatant disregard by a governmental official of the applicable law, this is it. When a lower tribunal misapplies the law, a petition for writ of certiorari must be granted. See *Colonial Apartments, L.P. v. City of Deland*, 577 So.2d 593 (Fla. 5th DCA 1991).    For these reasons, Petitioners respectfully request that this Court issue a Writ of Certiorari and quash the County's administrative judgment as set forth in the August 17, 2009 Rendition of Judgment.

## ARGUMENT THREE

### GROUND SIGN HEIGHT AND COPY AREA RESTRICTIONS ARE INAPPLICABLE TO OFF-PREMISE SIGN STRUCTURES

The County cites, in its June 3, 2009 Amended Official Determination letter, as a basis for rescinding the previously issued sign permit, that the Petitioners sign does not comply with the sign regulations for thoroughfare overlay districts, found in Section 72-297(j). Section 72-297(j) reads, in its entirety:

> "*Sign regulations:* The sign regulations established in section 72-298 et seq. shall also apply in any thoroughfare overlay zone; provided, however, the maximum permissible height for any ground sign is eight feet, and the maximum permissible copy area for any ground sign is 40 square feet."

From this provision, the County opines that the Petitioners' off-premise sign structure cannot exceed the eight foot ground sign height limitation and the forty square foot ground sign copy area restriction. However, the cited regulation for ground signs is clearly inapplicable to the applicant's off-premise advertising sign.

The thoroughfare overlay sign regulations begin by directing the County to apply the standard sign regulations applicable to all signs which are found within Section "72-298 et seq." When looking at Section 72-298 et seq., it is subparagraph 9 that is applicable to off-premise signs and reads as follows:

> "72-298(9) *Off-premises signs:*  Off-premises signs may only be erected in the B-6, I-1, or I-2 zoning classifications established in division 7, along federal-aid primary or interstate highways. Provided, however, that were the maximum number of signs is specified in this article, the erection of an off-premises sign shall not exceed the maximum number so specified.  Said off-premises signs shall otherwise comply with the requirements of F.S. ch. 479 and chapter 14-10, Florida Administrative Code."

In summary, the County ordinance for off-premise signs restricts off-premise signs to certain zones, along certain roads, and subject to the cap on the number of signs per lot based on zoning restrictions.  With these

restrictions laid out, the ordinance then clearly states "Said off-premise signs *shall otherwise* comply with the requirements of F.S. ch. 479 and chapter 14-10, Florida Administrative Code." (emphasis added). What this means is that off-premise signs have no other <u>county</u> restrictions. Instead, the County adopted the state restrictions on all other matters, including restrictions on sign height and copy area. To read this ordinance otherwise, would render the language "shall otherwise comply" meaningless.

Florida Statute 479.07(9)(b)(1) states that a sign located outside an incorporated area shall not exceed 50 in height, and 479.07(9)(b)(3) states that a sign shall not have a copy area in excess of 950 square feet. Because the County's ordinance specifically reverts to State law on all matters other than location and number of signs per lot, the County improperly applied the height and copy area restrictions of ground signs to the applicant's off-premise advertising sign permit. The County's failure to follow the clear an unequivocal language in the Ordinance, which directed the County to apply Section 72-298(j) off-premise sign regulations for off-premise signs in a thoroughfare overlay district, was a clear departure from the essential requirements of the law.

Furthermore, the County has **never** applied the "ground sign" height and copy area restrictions to off-premise signs, whether in a thoroughfare

overlay zone or outside such a zone. It has always been the State law regulations that have applied. That portion of Section 72-298 et seq.(the sign regulations) that address pertinent regulations for "ground signs" is found in Section 72-298(8)(b)(1) and states as follows:

> "*Ground signs:*... (ii) The copy area shall not exceed five square feet for each ten feet of street frontage, but in no event shall the maximum copy area exceed 125 square feet."

On appeal, Petitioners clearly advised the County that there was not a single off-premise sign structure standing in Volusia County that complies with this ground sign copy area restriction. It was pointed out that no "billboard" (a.k.a. off-premise signs) would have ever been built in the County if such a sign were restricted to a maximum copy area of 125 square feet. The fact that no existing off-premise sign meets the ground sign regulations regarding height and copy area is because the County has NEVER applied the ground sign height and copy area regulations to these types of signs before. In analyzing the County's position on this matter, the County is trying to argue that <u>outside</u> of a thoroughfare overlay district, off-premise signs are not considered ground signs for height and copy area restrictions, but <u>inside</u> a thoroughfare overlay district, off-premise signs are deemed ground signs for purposes of applying ground sign size and copy area restrictions. It is *wholly illogical* for an off-premise sign to not be a ground sign when it is

31

located outside a thoroughfare overlay district and to be a ground sign when located inside a thoroughfare overlay district.

The County was further provided with evidence of at least three off-premise sign structures that were built within a thoroughfare overlay district that exceeded the stringent ground sign restrictions. Two of the signs were built in 1997 at 34 feet in height and 600 square feet in copy area, while the third sign was built in 1987 and was built at 17 feet high and 200 square feet in copy area. When asked about these structures, the County simply stated they could not find permits for the structures and that they didn't know anything else about the signs. The Petitioners', however, provided copies of the Department of Transportation records showing the relevant data on the sign structures, including date built, height and copy area. According to State law, the State will not issue a permit for an off-premise sign structure unless the County signs the State's Permit Application form certifying that the sign complies with the local ordinances. Thus, the County was unable to refute the evidence presented by the Petitioners that the County has permitted off-premise signs to be built within a thoroughfare overlay district which exceeds the ground sign regulations.

Based on the clear language of the County's Ordinance and the prior actions of the County in its application of ground sign regulations, the

zoning determination, which was affirmed by the County Council, is improper and in error. The ultimate effect of the zoning determination is to amend the County's Ordinance as to how the County would like it to read, not how it actually reads. This type of action has been disapproved by the Florida Courts. See *Ocean Edge Development Corp. v. Town of Juno Beach*, 430 So.2d 472, 475 (Fla. 4th DCA), *review denied*, 436 So.2d 101 (Fla. 1983), wherein the 4th District Court of Appeal overturned the trial court on the basis that: "The effect of the trial court's decision was to amend the ordinance as the town would have liked it to read; not as it read." *Id* at 475. In this case, the County would *like* for it's ordinance to read that within thoroughfare overlay districts, **no signs** shall exceed 8 feet in height and 40 square feet in copy area. But that is not how the ordinance is written. As it is written now, the only difference from the standard sign regulations that applicable to thoroughfare overlay districts is that ground sign height and copy area restrictions are to be more restrictive..

It is well established in Florida that a statute or ordinance must be given its plain and obvious meaning. See *Ocean's Edge Development Corp. v. Town of Juno Beach*, 430 So.2d at 475 (Fla. 4th DCA), *review denied*, 436 So.2d 101 (Fla. 1983) (quoting *Rinker Materials Corp v. City of North Miami*, 286 So.2d 552, 553 (Fla. 1973)). The Fourth District Court of

Appeal in *City of Hallandale v Prospect Hall College, Inc.*, 414 So.2d 239,

240 (Fla. 4th DCA 1982) found that: "Since zoning regulations are in

derogation of private ownership rights, general zoning law provides that

zoning ordinances are to be construed broadly in favor of the property owner

absent clear intent to the contrary. 7 Fla.Jur.2d *Building, Zoning and Land

Controls §59 (1978).*" The premise espoused by the Fourth District Court of

Appeal in *City of Hallandale* was followed by the court in *Ocean's Edge

Development Corp. v. Town of Juno Beach*, 430 So.2d 472: "Government

cannot function in such after-the-fact fashion; property owners are entitled to

rely upon the clear and unequivocal language of municipal ordinances. This

principle is not innovative, nor does it originate with this court."

Ordinances are subject to the same rules of construction as are state

statutes. See *Rose v. Town of Hillsboro Beach*, 216 So.2s 258 (Fla.App.4th

1968); *Jacksonville v. Ledwith*, 26 Fla. 163, 7 So. 885 (Fla. 1890). *Rose* also

stands for the substantive proposition that courts generally may not insert

words or phrases in ordinances in order to express intentions which do not

appear, and must give to a statute (or ordinance) the plain and ordinary

meaning of the words employed by the legislative body. See also *Brooks v.

Anastasia Mosquito Control District* 148 So.2d 64 (Fla.App.1st 1963).

34

If the County desires a different meaning for the County Ordinance in the future, it may amend, modify, or change the same by Legislative process. See *Ocean's Edge Development Corp. vs. Town of Juno Beach*, 430 So.2d 472 (Fla. 4th DCA 1983). See also *Belair and Provident Management Corp. v. the City of Treasure Island*. 611 So. 2d 1285 (Fla. 2nd DCA 1992).

The administrative judgment of the County Commissioners, in affirming the June 3, 2009 amended official determination as the basis for the stop work order and the rescission of the sign permit, was a departure from the essential requirements of the law and is not supported by any competent or substantial evidence. For these reasons, Petitioners respectfully request that this Court issue a Writ of Certiorari and quash the County's administrative judgment as set forth in the August 17, 2009 Rendition of Judgment.

## PETITION FOR WRIT OF CERTIORARI
## CONCLUSION

The ordinances underlying each of the three reasons set forth in the June 3, 2009 amended Official Determination letter, are either inapplicable or have been misinterpreted in an attempt to rescind the Petitioners' sign permit. Granting certiorari and quashing the County's decision in this case is necessary in order to correct the blatant failure of the County to apply the correct law and to correct the gross miscarriage of justice that occurred during the administrative hearing below.

WHEREFORE, Petitioners respectfully request

(a) that the Court quash the County's judgment below and declare it void (1) as it departed from the essential requirement of law and (2) because the judgment was not supported by competent substantial evidence; and

(b) grant such other relief as this Court deems just and proper, including, but not limited to, granting Petitioners reimbursement of the attorneys fees and costs incurred.[4]

## COMPLAINT
## FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, INVERSE CONDEMNATION, VIOLATION OF EQUAL PROTECTION AND DAMAGES

COMES NOW, the Plaintiffs, KELSO OUTDOOR ADVERTISING, LLC, a Florida limited liability company (hereinafter "Kelso"), and GARY JOHNSON, the owner of real property located within unincorporated Volusia County (hereinafter "Johnson") (hereinafter collectively referred to as "Plaintiffs"), by and through their undersigned counsel, hereby sue the Defendant, VOLUSIA COUNTY, a political subdivision of the State of Florida, (hereinafter the "County"), and allege as follows:

---

[4] Petitioners reserve the right to file a Motion for Attorney's Fees pursuant to the Florida Rules of Appellate Procedure.

1. Plaintiff, Kelso Outdoor Advertising, LLC, as successor in interest to Metro Outdoor Advertising, LLC, is, and at all times herein mentioned, was a Florida limited liability company organized and existing under the laws of the State of Florida, and authorized to conduct business within the State of Florida (hereinafter referred to as "Kelso").

2. Plaintiff, Gary Johnson, is, and at all times herein mentioned was, a resident in Volusia County, Florida (hereinafter referred to as "Johnson").

3. Defendant, Volusia County, is a political subdivision of the State of Florida (hereinafter referred to as the "County").

4. At all times herein mentioned, Plaintiff Johnson was the owner of the real property located at 3131 W. International Speedway Blvd., Daytona Beach, Florida, Parcel ID# 34-15-32-00-00-0220 (hereinafter referred to as the "Property"), within unincorporated Volusia County.

5. At all time herein mentioned, Plaintiff Johnson operated a business, commonly referred to as The Daytona Aquarium, on a portion of the Property.

6. The County has classified Plaintiff Johnson's business as an aquaculture business.

7. The business conducted by Daytona Aquarium commenced on the subject Property in 1967.

37

8. The County adopted its Light Industrial (I1) zoning code in 1981.

9. Pursuant to the adoption of the zoning code in 1981, the subject Property was zoned Light Industrial (I1), a zoning designation that exists still today.

10. When the County adopted its zoning ordinance in 1981, the aquaculture use taking place on the Property became a nonconforming use as it was not a permitted use in an I1 zone.

11. The nonconforming aquaculture use was allowed to continue because it predated the zoning ordinance.

12. Off-premise sign structures are a permitted use in an I1 zoning classification.

13. On October 24, 2008, Kelso entered into a Lease Agreement with Johnson wherein, inter alia, Kelso agreed to rent Johnson's Property and in return for rental payments, Kelso would have the right to build and maintain an off-premise sign on the Property. (See attached Exhibit "A")

14. On November 11, 2008, the Plaintiffs filed an application for a permit to construct an off-premise sign structure upon the Property. (See attached Exhibit "B")

15.   On February 6, 2009, the County issued a Building Permit, #20081107017, for the construction of an off-premise sign on the subject Property. (See attached Exhibit "C")

16.   On November 13, 2008, the County Planning Manager signed a Florida Department of Transportation Application For Outdoor Advertising Sign Permit wherein he certified that he was authorized to sign the form, that the Plaintiffs' outdoor advertising sign is in compliance with all duly adopted local ordinances and has been or will be issued the necessary permits, and that this determination was made under his delegated authority. (See attached Exhibit "D")

17. On January 27, 2009, the Florida Department of Transportation, relying upon the representations of Volusia County, issued Outdoor Advertising Permits to Plaintiff Kelso. (See attached Exhibit "E")

18. As of May 27, 2009, the off-premise sign structure was being constructed.

19. As of May 27, 2009, the construction of the off-premise sign was nearly complete.

20. On May 27, 2009, the County delivered a Stop Work Order to the construction site.

21. This court has jurisdiction over the declaratory and injunctive matters contained herein pursuant to Chapter 86, Florida Statutes.

22. The declaration sought deals with a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts.

23. A power, privilege or right of the Plaintiffs is dependent upon the facts or the law applicable to the facts.

24. The Plaintiffs have an actual, present, adverse and antagonistic interest to the County in the subject matter of this action.

25. All adverse interests have been named as a party to this action, and the relief sought is not merely the giving of legal advice by the Court.

## COUNT ONE

### DECLARATORY AND INJUNCTIVE RELIEF
### (Ordinance 72-206(2)(c))

23. Plaintiffs reallege and incorporate the general and jurisdictional provisions in paragraphs 1 – 25 above.

24. On May 28, 2009, the County issued an Official Determination letter advising that the reason the stop work order was issued was because the original permit was, according to the County, issued in error. A true and correct copy of the May 28, 2009 official determination letter is attached hereto and made a part hereof as Exhibit "F."

25. Pursuant to the May 28, 2009 Official Determination letter, the County cited to Ordinance 72-206 which precludes the construction of any structure that is being built "...in connection with such nonconforming use."

26. The County subsequently issued an amended Official Determination letter, dated June 3, 2009, which restated, among other things, it's reliance upon Ordinance 72-206 as a basis for supporting its contention that the permit was issued in error. A true and correct copy of the June 3, 2009 Amended Official Determination letter is attached hereto and made a part hereof as Exhibit "G."

27. The preamble to Section 72-206, when referring to the different types of nonconformities, reads: "These nonconformities may continue in their present condition but shall not be enlarged, expanded, extended or used for adding other structures or uses prohibited elsewhere in the same classification." A true and correct copy of Section 72-206 is attached hereto and made a part hereof as Exhibit "H."

28. Section 72-206(2)(c) reads: "*Nonconforming use of Premise.* In any classification, a lawful principal or accessory use of premises existing on the effective date of adoption or amendment of the ordinance from which this article derives, but not permitted thereafter, may continue, or be

41

resumed if destroyed, provided: ... (c) No additional structure is constructed or erected in connection with such nonconforming use."

29. Plaintiffs contend that Defendant erroneously applied Section 72-206(2)(c) to the Plaintiffs' off-premise sign structure since the sign structure is not being built "in connection with" the nonconforming aquaculture use on the Property.

30.  An actual controversy has arisen and now exists between Plaintiffs and Defendant concerning their respective rights and duties in that Plaintiffs contend that the County misapplied the law when it cited to section 72-206(2)(c) as a means of justifying the alleged error that took place when the permit was issued to the Plaintiffs, whereas the Defendant disputes these contentions and contends that Section 72-206(2)(c) allows the County to preclude any further development on a parcel of land if a nonconforming use exists on the property, no matter if the development is connected to or not connected to the nonconforming use.

31. Plaintiffs desire a judicial determination of their rights and duties, and a declaration that Section 72-206(2)(c) is inapplicable to the construction of an off-premise sign on the subject Property as the sign structure is not being built in connect with the nonconforming aquaculture use.

42

32. A judicial declaration is necessary and appropriate at this time under these circumstances.

33. Plaintiffs have incurred, and continue to incur a substantial financial burden as a result of the unsettled state of affairs. Additionally, the Plaintiffs are incurring a loss of income for every day that the construction of the sign structure is being stopped by the Defendant's unjustified and grossly negligent actions.

34. Plaintiffs have had to hire counsel and pay counsel a reasonable attorney's fees and cost reimbursement in order to rectify the egregious miscarriage of justice that has taken place.

35. The Plaintiffs have exhausted all of their administrative remedies and all conditions precedent to the bringing of this action have been met.

36. Pursuant to Fla. Stat. §86.061, upon a declaration from this Court in favor of the Plaintiffs, and in light of the fact that Plaintiffs will have no other adequate remedy at law, Plaintiffs are entitled to supplemental relief in the form of a permanent injunction as more fully set forth below.

WHEREFORE, Plaintiffs pray for a judgment against the Defendant, as follows:

    a. For a declaration that Ordinance 72-206(2)(c) is not applicable to the Plaintiffs off-premise sign structure that is being built on

the subject Property because it is not a structure that is being built in connection with the nonconforming aquaculture use;

       b.   For an injunction enjoining the County from applying Ordinance 72-206(2)(c) to Plaintiffs previously issued permit; and

       c. For such other and further relief as the court deems just and property, including reimbursement of attorney's fees and costs pursuant to Florida law, including, but not limited to, Florida Statute 86.081.

## COUNT TWO

### DECLARATORY AND INJUNCTIVE RELIEF
### (Ordinance 72-280(b) and Ordinance 72-206(1))

37.  Plaintiffs reallege and incorporate the general and jurisdictional provisions in paragraphs 1 – 25 above.

38.  On May 28, 2009, the County issued an Official Determination letter advising that the reason the stop work order was issued was because the original permit was, according to the County, issued in error.  See attached Exhibit "F"

39.  The May 28, 2009 Official Determination letter only addressed Ordinance 72-206, precluding the construction of a structure in connection with a nonconforming use, as the basis for the alleged error.

40.   On May 28, 2009, counsel for Plaintiffs wrote informal correspondence to the County and the Assistant County Attorney, advising as to the inapplicability of the cited ordinance. A true and correct copy of said correspondence is attached hereto and made a part hereof as Exhibit "I."

41.   Following receipt of the Plaintiffs' legal position on the inapplicability of Ordinance 72-206, the County issued an Amended Official Determination letter, dated June 3, 2009. See attached Exhibit "G."

42. The June 3rd Amended Official Determination Letter now cited to three separate basis for the error that the County was alleging took place when the permit was previously issued to the Plaintiffs.

43. The second basis alleged by the County in the June 3rd Amended Official Determination Letter was that Ordinance 72-280(b) allows multiple principal structures on an industrial zoned lot only if the requirements of the Code are met for each structure as though it were on an individual lot. The County then states that the requirements of 72-280(b) cannot be satisfied because "the subject premises is a nonconforming lot" and identifies the nonconformity by addressing the minimum lot size and width requirements of I1 zoned lots as being one acre and 150 feet in width and identifying that the subject Property to be less than half an acre and only 107 feet wide.

44. In making this Amended Determination, the County has blatantly disregarded Ordinance 72-206(1).

45.    The relevant portion of Ordinance 72-206(1) states: *"Nonconforming lots.* In any zoning classification, principal and accessory structures otherwise authorized under this article may be erected or constructed on any single nonconforming lot, if all classification requirements other than lot area or width are met." (See attached Exhibit "H.")

46. The relevant portion of Section 72-280(b) reads: "In commercial, industrial, conservation and public use classifications, more than one principal structure may be erected on a lot, provided that the requirements of this article shall be met for each principal structure as though it were on an individual lot, except hotels and multifamily structures."

47.    Despite the clear identification of Ordinance 72-206(1) in the appeal paperwork filed with the County, which mandates the County to disregarding nonconformities in lot size and width when authorizing a principal structure, the County never withdrew this erroneous application of the law.

48. During the public hearing held on August 6, 2009, the County failed to provide any explanation whatsoever as to why it was not

acknowledging Ordinance 72-206(1) and why the County was not following its mandates to disregarding nonconformities in lot size and width.

49.  Had the County acknowledge and properly applied Ordinance 72-206(1), the County would have had no support for its determination contained in the June 3rd Amended Official Determination letter that the addition of a second principal structure on the subject Property was precluded by Ordinance 72-280(b) because the lot was nonconforming in size and width.

50.  An actual controversy has arisen and now exists between Plaintiffs and Defendant concerning their respective rights and duties in that Plaintiffs contend that Ordinance 72-206(1) mandates the County to disregard nonconformities in lot size and width when authorizing principal structures such as the Plaintiffs, whereas the Defendant presumably disputes these contentions by way of its actions in failing to even acknowledge or address Ordinance 72-206(1) despite bring this Ordinance to the Defendant's attention.

51.  Plaintiffs desire a judicial determination of its rights and duties, and a declaration that Ordinance 72-206(1) is applicable to the permitting of the off-premise sign as a second principal use on the subject Property, that said Ordinance precludes the Defendant from alleging that nonconformities

47

in lot size and width, as stated in the June 3rd Amended Determination Letter, justifies rescinding the permit issued to the Plaintiffs, and that the Plaintiffs off-premise sign structure meets the requirements of Ordinance 72-280(b) and can be built on the subject Property.

52. A judicial declaration is necessary and appropriate at this time under the circumstances.

53. Plaintiffs have incurred, and continue to incur a substantial financial burden as a result of the unsettled state of affairs. Additionally, the Plaintiffs are incurring a loss of income for every day that the construction of the sign structure is being stopped by the Defendant's unjustified and grossly negligent actions.

54.Plaintiffs have had to hire counsel and pay counsel a reasonable attorney's fees and cost reimbursement in order to rectify the egregious miscarriage of justice that has taken place.

55. The Plaintiffs have exhausted all of their administrative remedies and all conditions precedent to the bringing of this action have been met.

56. Pursuant to Fla. Stat. §86.061, upon a declaration from this Court in favor of the Plaintiffs, and in light of the fact that Plaintiffs will have no other adequate remedy at law, Plaintiffs are entitled to supplemental relief in the form of a permanent injunction as more fully set forth below.

WHEREFORE, Plaintiffs pray for a judgment against the Defendant, as follows:

a. For a declaration that Ordinance 72-206(1) is applicable to the Plaintiffs off-premise sign structure that is being built on the subject Property and that based on Ordinance 72-206(1) the County must disregard nonconformities in lot size and width when addressing the permit issued to the Plaintiff;

b. For a declaration that the permit previously issued by the Defendant to the Plaintiffs meets the requirements of Ordinance 72-280(b) as a second principal use because it meets all of the requirements of the Code as if the second principal use was on its own lot;

c. For an injunction enjoining the County from applying Ordinance 72-280(b) and Ordinance 72-206(1) to Plaintiff's previously issued permit; and

d. For such other and further relief as the court deems just and property, including reimbursement of attorney's fees and costs pursuant to Florida law, including, but not limited to, Florida Statute 86.081.

## COUNT THREE

## DECLARATORY AND INJUNCTIVE RELIEF
(Ordinance 72-297(j))

49

57  Plaintiffs reallege and incorporate the general and jurisdictional provisions in paragraphs 1 – 25 above.

58.  On May 28, 2009, the County issued an Official Determination letter advising that the reason the stop work order was issued was because the original permit was, according to the County, issued in error.  See attached Exhibit "F".

59.  The May 28, 2009 Official Determination letter only addressed Ordinance 72-206, precluding the construction of a structure in connection with a nonconforming use, as the basis for the alleged error.

60.  On May 28, 2009, counsel for Plaintiffs wrote informal correspondence to the County and the Assistant County Attorney, advising as to the inapplicability of the cited ordinance. See attached Exhibit "I."

61.  Following receipt of the Plaintiffs' legal position on the inapplicability of Ordinance 72-206, the County issued an Amended Official Determination letter, dated June 3, 2009. See attached Exhibit "G."

62.  The June 3rd Amended Official Determination Letter now cited to three separate basis for the error that the County was alleging took place when the permit was previously issued to the Plaintiffs.

63.  The third basis alleged by the County in the June 3rd Amended Official Determination Letter was that Ordinance 72-297(j) provided that

within the thoroughfare overlay district, ground signs are limited to a maximum sign height of eight feet and a maximum copy area of forty square feet and that since the sign structure was permitted in excess of these dimensions, then the permit was issued in error.

64.  Outside of a thoroughfare overlay district, when an off-premise sign structure is built, the provisions of Ordinance 72-298(9) apply.  A true and correct copy of Ordinance 72-298 in its entirety is attached hereto and made a part hereof as Exhibit "J."

65.  Ordinance 72-298(9) states: "*Off-premise signs*.  Off-premises signs may only be erected in the B-6, I-1, or I-2 zoning classifications established in division 7, along federal-aid primary or interstate highways. Provided, however, that where the maximum number of signs is specified in this article, the erection of an off-premises sign shall not exceed the maximum number so specified. Said off-premises signs shall otherwise comply with the requirements of F.S. ch. 479 and chapter 14-10, Florida Administrative Code."

66.  Outside of a thoroughfare overlay district, the County reverts to the State rules set forth in F.S. ch. 479 when permitting a the height and copy area of an off-premise sign.

67.   Outside of a thoroughfare overlay district, Ordinance 72-298(8)(b)(1)(ii) sets forth the maximum copy area for "ground signs" and states that "...in no event shall the maximum copy area exceed 125 square feet."

68.   Off-premise signs previously permitted by the County have not been required to comply with the maximum 125 square foot copy area restriction applicable to ground signs.

69.   Typical off-premise "billboard" signs permitted in the County have routinely been permitted at copy areas authorized by the State statute, the standards being 672 square feet (14'x48') or 300 square feet (10'x30').

70.   The sign regulations for inside a thoroughfare overlay district are found in Ordinance 72-297(j) which states: "*Sign regulations.*  The sign regulations established in section 72-298 et seq. shall also apply in any thoroughfare overlay zone; provided, however, the maximum permissible height for any ground sign is eight feet, and the maximum permissible copy area for any ground sign is 40 square feet."  A true and correct copy of Ordinance 72-297(j) is attached hereto and made a part hereof as Exhibit "K."

71.   Ordinance 72-297(j) directs the County to apply the sign regulations established in Section 72-298 and, in doing so, the County

should have applied the State statute restrictions for off-premise sign structures, just as the County would have done if the sign was located outside of a thoroughfare overlay district.

72. The Plaintiffs' off-premise sign structure, as previously permitted, complies with the height and copy area restrictions found in Chapter 479, Florida Statute.

73. The Plaintiffs were issued permits by the Florida Department of Transportation for the construction of an off-premise sign on the subject Property at the height and copy area applied for on the County permit application.

74. The Defendant has improperly interpreted Ordinance 72-297(j) to mean that the Plaintiffs' off-premise sign structure suddenly becomes reclassified as a "ground sign" when it is within a thoroughfare overlay district, but when it is outside a thoroughfare overlay district, it is not a "ground sign" for purposes of determining permissible height and copy area.

75.   The County's interpretation disregards the language in the Ordinance itself which states, in section 72-298(9) that, beyond restrictions regarding which zones are appropriate, what roadways the signs must be on, and the number of signs per lot, all other matters related to the off-premise sign "shall otherwise" be controlled by State law.

76.   The language within Ordinance 72-298(9) mandates that the County follow state law when permitting the height and copy area of off-premise signs.

77. An actual controversy has arisen and now exists between Plaintiffs and Defendant concerning their respective rights and duties such that Plaintiffs contend that Ordinance 72-297(j) mandates the County to apply the off-premise sign regulations found at 72-298(9) when permitting an off-premise sign in a thoroughfare overlay district, whereas the Defendant presumably disputes these contentions by asserting that the off-premise sign is subject to the more restrictive size and copy area limitations applicable only to ground signs when an off-premise sign is built within a thoroughfare overlay district.

78.   Plaintiffs desire a judicial determination of its rights and duties, and a declaration that the more restrictive ground sign regulations found in Ordinance 72-297(j) are not applicable to the permitting of the Plaintiffs' off-premise sign, that the clear and unequivocal language in Ordinance 72-298(9) precludes the Defendant from applying any regulations other than those set forth in F.S. ch. 479 and chapter 14-10, Florida Administrative Code, when it comes to determining off-premise sign height and copy area restrictions, and that the Plaintiffs off-premise sign structure meets the size

54

and height requirements found in applicable state statute, as evidenced by the permits previously issued by the State, and can therefore be built on the subject Property.

79.  A judicial declaration is necessary and appropriate at this time under the circumstances.

80.  Plaintiffs have incurred, and continue to incur a substantial financial burden as a result of the unsettled state of affairs.  Additionally, the Plaintiffs are incurring a loss of income for every day that the construction of the sign structure is being stopped by the Defendant's unjustified and grossly negligent actions.

81. Plaintiffs have had to hire counsel and pay counsel a reasonable attorney's fees and cost reimbursement in order to rectify the egregious miscarriage of justice that has taken place.

82. The Plaintiffs have exhausted all of their administrative remedies and all conditions precedent to the bringing of this action have been met.

83. Pursuant to Fla. Stat. §86.061, upon a declaration from this Court in favor of the Plaintiffs, and in light of the fact that Plaintiffs will have no other adequate remedy at law, Plaintiffs are entitled to supplemental relief in the form of a permanent injunction as more fully set forth below.

WHEREFORE, Plaintiffs pray for a judgment against the Defendant, as follows:

a. For a declaration that the more restrictive ground sign height and copy area restrictions found in Ordinance 72-297(j) are inapplicable to the Plaintiffs off-premise sign structure;

b. For a declaration pursuant to Ordinance 72-297(j) and the applicable provision in Ordinance 72-298 dealing with off-premise signs, the County must revert to F.S. ch. 479 when determining permissible height and copy area restrictions for off-premise signs within a thoroughfare overlay district;.

b. For a declaration that the permit previously issued by the Defendant to the Plaintiffs meets the requirements of Ordinance 72-297(j);

c. For an injunction enjoining the County from applying ground sign height and copy area restrictions to off-premise signs; and

d. For such other and further relief as the court deems just and property, including reimbursement of attorney's fees and costs pursuant to Florida law, including, but not limited to, Florida Statute 86.081.

## COUNT FOUR

### EQUITABLE ESTOPPEL
(Alternative to Counts One – Three, and Count Five)

84.    The Plaintiffs reallege and incorporate the general and jurisdictional provisions in paragraphs 1-25 above.

85. The permit application submitted by the Plaintiffs was reviewed and approved by no less than two County employees; a zoning planner and a plans examiner.

86. At no time during the permitting process were the Plaintiffs asked whether a nonconforming use existed on the property.

87.    The Volusia County Planning Manager executed a State of Florida Department of Transportation Outdoor Advertising Sign Permit Application wherein the Planning Manager certified that the subject sign structure met the Volusia County Code of Ordinances and would be issued a permit.

88. In reliance upon the representations made by Volusia County, the State of Florida issued state permits to Plaintiff Kelso.

89  The County issued the sign permit to Plaintiffs on February 6, 2009.

90. Plaintiffs had a vested right in the issued permit.

91. The act of issuing the permit to the Plaintiffs constituted a material representation to the Plaintiffs that an off-premise sign structure was permitted by the Code on the subject Property.

92. The permit was issued intentionally and lawfully by the proper county official.

93. There was no mistake of fact in issuing the subject permit to the Plaintiffs.

94. There was no mistake of law in issuing the subject permit to the Plaintiffs.

95. The Plaintiffs' relied on the permit and paid for, among other things, the steel structure, labor, installation costs, concrete, cranes, and lease payments, and engaged in activities that cost the Plaintiffs money including, among other things, shutting down the retail business for construction.

96. Plaintiffs commenced construction of the subject sign structure.

97. The subject sign structure was being built according to the specifications permitted by the County.

98. All of the actions taken by the Plaintiffs in reliance upon the issued permit were done in good faith.

99. The Plaintiffs substantially changed their position in reliance upon the permit when the Plaintiffs incurred expenses and paid sums over $100,000.00 while acting in good faith reliance upon the issued permit.

100. During the construction, the County received a complaint from one neighboring property owner who objected to the idea of a billboard going up next to his property.

101. As of May 27, 2008, the subject sign structure was 95% complete.

102. On May 27, 2009 the County issued a Stop Work Order.

103. Upon the request of Plaintiffs' counsel, the County provided an Official Determination Letter, dated May 28, 2009, wherein the County represented to the Plaintiffs for the first time that the off-premise sign structure allegedly did not meet the County Code.

104. In the May 28th Official Determination Letter, the County cited Ordinance 72-206 and stated that a nonconforming use was taking place on the property, that being an aquaculture business, and that it was the County's opinion that Ordinance 72-206 did not allow any other uses on the property if a nonconforming use exists.

105. After counsel for the Plaintiffs advised the County in writing as to the legal reasons why Ordinance 72-206(2)(c) was wholly inapplicable, the County issued an Amended Official Determination Letter, dated June 3, 2009, citing two new reasons why the permit was allegedly issued in error.

106.   The three ordinances cited by the County as justification for the alleged error are wholly and blatantly inapplicable to the Plaintiffs' permit.

107.   The County engaged in egregious misconduct when it asserted Ordinance 72-206(2)(c) as an after-the-fact justification for the stop work order and permit rescission, as the language in the code itself dictates that the Ordinance only applies when the structure is being built "in connection with the nonconforming use"

108.   The County has issued permits to applicants which permitted the construction of a principal and/or accessory use on a parcel of land where a nonconforming use existed.

109.   The County engaged in egregious misconduct when it asserted Ordinance 72-206(2)(c) as an after-the-fact justification for the stop work order and permit rescission, in light of the fact that and the County has previously issued permits to other applicants that permitted the construction of a principal and/or accessory use on a parcel of land where a nonconforming use existed.

110.   The County engaged in egregious misconduct when it asserted that the second principal use could not be built on the Property because the subject Property did not meet the minimum lot size and width requirements for Industrial zoned properties; an assertion that maliciously and blatantly

ignored Ordinance 72-206(1), which mandates that the County disregarding nonconformities in lot size and width when permitting a second principal use.

111. The County engaged in egregious misconduct when it asserted that the "ground sign" height and copy area limitations within a thoroughfare overlay district were applicable to the Plaintiffs' off-premise sign structure, in light of the facts that (i) the Ordinance itself specifically directs the County to apply the off-premise sign regulations found in 72-298(9) to the subject sign, and (ii) no other off-premise sign in the entire County has been held to ground sign height and copy area restrictions.

112. The County's egregious behavior amounts to bureaucratic ineptitude, it displays a blatant indifference to the rights of the Plaintiffs and is grossly negligent.

113. In the alternative, even if this Court were to find that any of the three named ordinances are applicable, the County is equitably estopped from rescinding the permit due to the vested rights that the Plaintiffs have in the permit resulting for the substantial reliance upon the issued permit.

WHEREFORE, Plaintiffs respectfully request that this Court issue a judgment in favor of the Plaintiffs, holding:

a.  that the County is equitably estopped from enforcing any of the provisions contained in it's June 3, 2009 Official Determination Letter upon the Plaintiff; and

b. that the permit previously issued to the Plaintiff is a validly issued permit that cannot be rescinded by the County; and

c.  grant such other relief as the court deems just and proper, including, but not limited to, reimbursement of attorneys' fees and costs incurred by the Plaintiffs in having to litigate the issues related to the County's blatant disregard for language contained in its own Ordinance.

## COUNT FIVE

### EQUAL PROTECTION
(Alternative to Counts One – Three, and Count Four)

114.  Plaintiffs reallege and incorporate the general and jurisdictional provisions in paragraphs 1 –25 above.

115. Both the United States Constitution, 42 U.S.C. Section 1983, and the Florida Constitution, Article 1, Section 2, grant the Plaintiffs the right to be treated equally, as all other similarly situation property owners are treated.

116.   The decision of the County, in affirming the Official Determination letter dated June 3, 2009, has resulted in the County treating the Plaintiffs different from other applicants.

117.   The County has treated other property owners, seeking to add principal or accessory uses to a parcel of land where a nonconforming use exists, different from the Plaintiffs by permitting the addition of such uses.

118.   The County has treated other property owners, seeking to add principal or accessory uses to a parcel of land which is nonconforming in lot size or width, different from the Plaintiffs by permitting the addition of such uses.

119.   The County has treated other property owners, seeking to construct or maintain an off-premise sign within a thoroughfare overlay district at heights exceeding 8 feet and copy area exceeding 40 square feet, different from the Plaintiffs by permitting such uses.

120.   The County has treated other property owners, seeking to construct an off-premise sign at heights and copy areas that exceed the "ground sign" height and copy area restrictions, different from the Plaintiffs by permitting such uses.

121.   The discrimination by the County, in treating the Plaintiffs unequally, was done intentionally.

122.   The unequal treatment by the County bears no rational relationship to a legitimate state purpose.

123.   The Plaintiffs have incurred damages, in excess of $15,000 as a result of the Defendant's actions.

WHEREFORE, the Plaintiffs respectfully request that this Court find:

a.  That the Defendant has treated the Plaintiffs different from other property owners in similar situations;

b.  That the Defendants actions, in treating the Plaintiffs different from other similarly situation property owners, was an unconstitutional act that violated those provisions of the Florida Constitution mandating equality;

c.  That the Defendant's actions were intentional;

d.  That the Defendant is liable to the Plaintiffs for all damages incurred as a result of the Defendant's unconstitutional acts;

e.  Award the Plaintiffs their attorney's fees and costs incurred; and

f.  Grant such other relief as this Court deems just and proper.


## COUNT SIX

### DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES
(Plaintiffs' Right of Access to Courts Under Article 1, Section 21, Florida Constitution, Have Been Violated)

64

124. Plaintiffs reallege and incorporate the general and jurisdictional provisions in paragraphs 1-25 above.

125. Plaintiffs seek declaratory relief from this Court ruling that Volusia County Code of Ordinances, Section 72-380, is an unconstitutional violation of Plaintiffs' right of access to courts under Article 1, Section 21, Florida Constitution.

126. Ordinance 72-380 states:

"Any person aggrieved by any decision of the county council may apply to the circuit court for review by certiorari, within 30 days after the rendition of the decision of the county council. He shall notify all interested persons, and all persons entitled by this article to receive notice of the original public hearing, by certified mail, return receipt requested, of his taking of such appeal."

127.   Application of the foregoing ordinance results in an unconstitutional denial of access to courts in violation of Article 1, Section 21, of the Florida Constitution.

128. The Plaintiffs are denied access to the courts, to exercise their constitutional and statutory right to appeal the quasi-judicial decision of the county commissioners, without first/simultaneously providing notice of the appeal to the neighboring property owners (i.e., those persons who were

entitled to receive notice of the public hearing when the Plaintiffs' appealed the decision of the zoning enforcement officer).

129. Further, the Plaintiffs' are required to expended additional sums of money to meet the County's extraordinary requirements of providing notice via certified mail, return receipt requested, as a condition precedent to filing the Petition for Writ of Certiorari.

130. The neighboring property owners do not have any right, statutorily or otherwise, to participate in the proceedings involving the Petition for Writ of Certiorari.

131. To mandate that the Plaintiffs can only file a Petition for Writ of Certiorari to the Circuit Court upon providing notice to the neighboring property owners via certified mail, return receipt requested, when in fact these property owners have no rights to participate in the Petition process, would be an unconstitutional violation of the Plaintiffs' right of access to courts under Article 1, Section 21 of the Florida Constitution.

132. The right to go to court to resolve our disputes is one of our fundamental rights.

133. There is no overpowering public necessity for requiring that notice to the neighboring property owners, via certified mail, return receipt requested, be a condition precedent to proceeding forward with the Petition

for Writ of Certiorari, especially in light of the fact that the neighboring property owners do not have the right to participate in the Writ proceedings.

134. In the event notice is not given, or that notice is not given in the manner provided by Ordinance 72-380, the County would have the right to file a notice to dismiss the Petition for Writ of Certiorari citing failure of the Plaintiffs' to satisfying those conditions precedent as set forth in Ordinance 72-380.

135. At present, the Plaintiffs' provided the notice as required under Ordinance 72-380, under protest and with the representation that the Plaintiffs' were only providing notice so as to comply with the Ordinance while a cause of action for declaratory relief and damages was filed with a court of competent jurisdiction.

136. Plaintiffs are in doubt and are uncertain as to their rights regarding the constitutionality of the provision within Ordinance 72-380, requiring notice via certified mail return receipt requested to those parties that had the right to notice of the public hearing on the appeal of the zoning official's determination. Plaintiffs' are entitled to have such doubt and uncertainty removed.

WHEREFORE, the Plaintiffs' respectfully request that this court:

(a) declare that second sentence contained in Ordinance 72-380, which states: "He shall notify all interested persons, and all persons entitled by this article to receive notice of the original public hearing, by certified mail, return receipt requested, of his taking of such appeal" to be unconstitutional, in violation of Article 1, Section 21 of the Florida Constitution;

(b) issue a permanent injunction enjoining the County from enforcing the second sentence in Ordinance 72-380;

(c) award Plaintiffs' damages in the form of reimbursement of all costs incurred by Plaintiffs to comply with the unconstitutional provision;

(d) award Plaintiffs' attorney's fees and costs incurred; and

(e) grant such other relief as this court deems just and proper.

Respectfully submitted this 15th day of September, 2009.

Law Office of Jennifer Sloane, PLC
Jennifer Sloane, Esq.
P.O. Box 2890
Winter Park, Florida 32790
Tel.: 407-599-7400
Fax: 407-599-7440
Florida Bar No.: 0144479

68

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail on September 15, 2009 to:

Frank T. Bruno, Jr., County Chair
County Council Chairman
123 W. Indiana Ave.
DeLand, Florida 32720

Michael Dyer, Esq.
Assistant County Attorney
123 W. Indiana Ave.
DeLand, Florida 32720

## CERTIFICATE OF COMPLIANCE

I hereby certify that the text of the foregoing amended petition is typed in Times New Roman 14-point font pursuant to Rule 9.100(l), Florida Rules of Appellate Procedure.

BY: _____
Jennifer L. Sloane